**CITY OF CLEVELAND**

v.

**WHITNER.** █

2002-Ohio-4220.]

Cleveland Municipal Court, Ohio.

No. 2001 CRB 51103.

Decided March 20, 2002.

Lorraine Coyne, Assistant City Prosecutor, for plaintiff.

Kenneth J. Rexford and Legal Aid Society of Cleveland, for defendant.

---

MARY EILEEN KILBANE, Judge.

{¶ 1} Defendant Larry Whitner is charged with domestic violence under R.C. 2919.25, and with aggravated menacing under Cleveland Codified Ordinance ("C.C.O.") 621.06. On November 23, 2001, in Cleveland, defendant allegedly choked his wife Patricia Whitner and stated that he was going to kill her. He then allegedly picked up a kitchen knife and chased his wife out of their home. As she attempted to flee to her car, defendant allegedly placed the knife against Patricia's throat and again threatened to kill her.

{¶ 2} Defendant has filed a motion to dismiss, contending that the domestic violence charge brought against him violates the Equal Protection Clause. He argues that, because the Cleveland Police Department ("CPD") receives some funding from a grant by the United States Department of Justice pursuant to the Violence Against Women Act ("VAWA"), Section 2261 et seq., Title 18, U.S.Code, and because the funding purportedly covers only prosecution of males, his rights have been violated.

{¶ 3} Defendant's contention fails on two grounds: standing and equal protection.

## STANDING

{¶ 4} Defendant lacks standing to argue that his rights have been violated.

{¶ 5} Before an Ohio court may consider the merits of a legal claim, the person seeking relief must establish standing. *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. At its core, the question of standing is whether a litigant is entitled to have a court decide the merits of a dispute or of particular issues. *Warth v. Seldin* (1975), 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343. The concept of standing embodies general concerns about how courts should function in a democratic system of government. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. As the Ohio Supreme Court has held:

{¶ 6} "It has long and well been established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from

giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371. These concerns "become more acute where there may be an intrusion into areas committed to another and coequal branch of government." *Sheward,* 86 Ohio St.3d at 469, 715 N.E.2d 1062. In this case, the executive branch, which bears the responsibility for enforcement of the law, will obviously be directly affected by the court's ruling.

{¶ 7} Unlike the federal courts, state courts are not bound by constitutional strictures on standing. Standing is, rather, a self-imposed rule of restraint for state courts. *Sheward,* 86 Ohio St.3d at 470, 539, 715 N.E.2d 1062. Indeed, "when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." *Sheward,* 86 Ohio St.3d at 471, 715 N.E.2d 1062. Concerns about standing have been downplayed by Ohio courts in such cases as a challenge to the legislative reconstruction of all common pleas court districts in the state, *In re Assignment of Judges to Hold Dist. Courts* (1878), 34 Ohio St. 431, 1878 WL 49; an attack upon the election of a common pleas judge, *State v. Brown* (1882), 38 Ohio St. 344, 1882 WL 76; and a lawsuit seeking to force a large city to advertise for bids to build a street railway, *State ex rel. Meyer v. Henderson* (1883), 38 Ohio St. 644, 1883 WL 19.

{¶ 8} Ordinarily, the term "parties" is used to designate the opposing sides in a judicial proceeding. *Gladman v. Carns* (1964), 9 Ohio App.2d 135, 38 O.O.2d 149, 223 N.E.2d 378. The parties are those persons seeking to establish a right, and those upon whom it is sought to impose a corresponding duty or liability, or who may have or claim to have an interest in the subject matter of a court case. *Miami Trace Local School Dist. Bd. of Edn. v. Marting* (1961), 88 Ohio Law Abs. 453, 185 N.E.2d 583. The character of a party as adverse or otherwise is to be determined not by one's position upon the docket or in the title of the case but by reference to the party's relation to the other parties as shown by the interests involved in the case. *Allen v. Miller* (1860), 11 Ohio St. 374, 1860 WL 71. A party lacks standing to invoke the jurisdiction of a court unless the party has, in an individual or representative capacity, some real interest in the subject matter of the action. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 64 O.O.2d 103, 298 N.E.2d 515; *Steiniger v. Butler Cty. Bd. of Commrs.* (1989), 60 Ohio App.3d 122, 573 N.E.2d 1212. The United States Supreme Court has held:

{¶ 9} "It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct. * * * The injury or threat of injury must be both 'real and

immediate,' not 'conjectural' or 'hypothetical.' " (Citations omitted.) *O'Shea v. Littleton* (1974), 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674; see, also, *Kelly v. Whiting* (July 21, 1983), Cuyahoga App. No. 45760, at 3, 1983 WL 5565.

{¶ 10}  Defendant lacks standing to raise the equal protection claim he does here.  In the court's view, this is not a matter of "great importance and interest to the public," *Sheward*, 86 Ohio St.3d at 471, 715 N.E.2d 1062, as defendant has failed to show that he is a victim of CPD's allegedly discriminatory policy at all, let alone that he is one of many such victims.  Defendant does not assert that he is a male victim of domestic violence.  He therefore cannot persuasively claim that, because some women are allegedly not being charged with committing domestic violence in Cleveland, his rights have been violated.  Even if some women were going free because they committed domestic violence, this does not affect the underlying truth or falsehood of the charges against defendant.  Defendant is not a "party" within the meaning of the law, and the standard of judicial restraint historically displayed by Ohio courts as to standing has not been overcome.  Accordingly, defendant's claim must fail for lack of standing.

## EQUAL PROTECTION

{¶ 11}  Even if defendant had standing to attack the basis of the charges against him, he would still fail on the merits of his equal protection argument.

{¶ 12}  The Fourteenth Amendment to the United States Constitution provides in Section 1:

{¶ 13}  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;  nor shall any State deprive any person of life, liberty, or property, without due process of law;  nor deny to any person within its jurisdiction the equal protection of the laws."

{¶ 14}  Much of defendant's argument hinges on his contention that women are slightly more likely than men to be the aggressors in committing domestic violence and that federal law is thus at variance with reality, to the detriment of men such as the defendant.  In support of this contention, defendant cites the Gelles & Straus study, a 1985 study based upon a telephone poll of the general public, last updated in 1998.

{¶ 15}  Notwithstanding defendant's study, which the court believes is outdated and relies on suspect methodology, it is now commonly accepted that roughly 95 percent of spouse-abuse victims are women.  Brigner, The Domestic Violence Benchbook (Family Violence Prevention Center, Ohio Office of Criminal Justice Services, Columbus 2002), at 2–3;  Zegree & Johansen, When Domestic Violence Comes to Work (National College of District Attorneys, Dallas 1998);  see, also, Adrine & Ruden, Ohio Domestic Violence Law (West Group, Cleveland 2001), at

14. One-third of all female homicide victims are killed by a husband or boyfriend. Brigner, Benchbook, at 1. Even the Gelles & Straus study, to which defendant refers, includes this caveat: "[M]any of the assaults by women against their husbands are acts of retaliation or self-defense. One of the most fundamental reasons why women are violent within the family (but rarely outside the family) is that for a typical American woman, her home is the location where there is the most serious risk of assault." Bachman, Incidence Rates of Violence Against Women: A Comparison of the Redesigned National Crime Victimization Survey and the 1985 National Family Violence Survey, Violence Against Women Online Resources, http://www.vaw.umn.edu/Vawnet/incidenc.htm. Approximately 10 to 50 percent of women entering divorce mediation have been victims of domestic violence. Fischer, Vidmar & Ellis, The Culture of Battering and the Role of Medication in Domestic Violence Cases (1993), 46 S.M.U.L.Rev. 2117; Brigner, Benchbook, at 75. Assaults are the second-leading cause of job-related deaths for all workers, and the leading cause for women. Weldon, Safety at Work Can't Be Taken for Granted (Tribune Media Service 1997). The Bureau of National Affairs estimates that American businesses lose between $3–5 billion annually from increased absenteeism and lost productivity caused by domestic violence, by far most often against women. Gagnon, Employee Liability for Workplace Violence, Crime Victims Litigation Quarterly (National Victim Center Online 1997). Passed in 1994, VAWA is Congress's response to the all-too-extensive body of evidence that American women are the victims of domestic violence far more often than men.

{¶ 16} The mere fact that CPD is receiving a VAWA grant does not necessarily mean that men are being targeted in violation of the Equal Protection Clause. A VAWA grant does not prevent a woman from being charged with domestic violence if a police office has reasonable cause to believe that she has committed the crime; such a grant simply provides resources for the prosecution of men for the crime. Presumably, prosecutions of women for domestic violence would be paid for by CPD's and the City Prosecutor's regular budgets. There is nothing to prevent women from being prosecuted in Cleveland for domestic violence, and, in fact, they are.

{¶ 17} Selective prosecution violates the Equal Protection Clause when it is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446; *Snowden v. Hughes* (1944), 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. Defendant has not shown that charging men with domestic violence, where there is evidence to support the charge, is the result of an "arbitrary classification." There is nothing to suggest that CPD's domestic violence arrest rates do

anything other than reflect an unfortunate truth of American society today: that men commit most crimes of domestic violence.

{¶ 18}  A defendant alleging selective or discriminatory prosecution bears a heavy burden.  *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81, 407 N.E.2d 15; *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 531, 709 N.E.2d 1148; *Zageris v. Whitehall* (1991), 72 Ohio App.3d 178, 186, 594 N.E.2d 129.  He must show "intentional and purposeful discrimination." *State v. Freeman* (1985), 20 Ohio St.3d 55, 58, 20 OBR 355, 485 N.E.2d 1043; *Trzebuckowski,* 85 Ohio St.3d at 531, 709 N.E.2d 1148.  The "burden of showing discriminatory enforcement * * * is not satisfied by a mere showing that others similarly situated have not been prosecuted." *Elsaesser v. Hamilton Bd. of Zoning Appeals* (1990), 61 Ohio App.3d 641, 648–649, 573 N.E.2d 733; *Cleveland v. Bosak* (1995), 104 Ohio App.3d 520, 524, 662 N.E.2d 851.  The defendant must make at least a prima facie showing of discriminatory treatment or selective prosecution. *Flynt,* supra.  A selective-prosecution claim is not a defense to a criminal charge on its merits but "an independent assertion that the prosecution has brought the charge for reasons forbidden by the Constitution.  * * * [T]he standard is a demanding one." *United States v. Armstrong* (1996), 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687.

{¶ 19}  The Ohio Supreme Court has adopted the two-prong test of *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211, to determine whether there has been selective prosecution under Ohio law.  *Flynt,* 63 Ohio St.2d at 134, 17 O.O.3d 81, 407 N.E.2d 15.  A defendant alleging selective prosecution must demonstrate "(1) that, while others similarly situated have not generally been proceeded against [despite] conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Flynt,* 63 Ohio St.2d at 134, 17 O.O.3d 81, 407 N.E.2d 15.  See, also, *State v. Getsy* (1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866; *State v. Lawson* (1992), 64 Ohio St.3d 336, 595 N.E.2d 902; *Bosak,* 104 Ohio App.3d at 525, 662 N.E.2d 851.

{¶ 20}  There is a strong presumption that prosecutorial choices are not discriminatory.  *State v. Keene* (1998), 81 Ohio St.3d 646, 693 N.E.2d 246; *Trzebuckowski,* 85 Ohio St.3d at 532, 709 N.E.2d 1148.  The conscious exercise of some selectivity in enforcement is not, in itself, a violation of the Equal Protection Clause. *Flynt,* supra; *Zageris,* 72 Ohio App.3d at 186, 594 N.E.2d 129.  Intentional or purposeful discrimination will not be presumed from a showing of mere differing treatment. *Snowden,* 321 U.S. at 8–9, 64 S.Ct. 397, 88 L.Ed. 497, cited

in *Freeman,* 20 Ohio St.3d at 58, 20 OBR 355, 485 N.E.2d 1043. In our justice system, "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring, * * * generally rests entirely in his discretion." *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604; *State ex rel. Nagle v. Olin* (1980), 64 Ohio St.2d 341, 347, 18 O.O.3d 503, 415 N.E.2d 279. This is so unless, as noted above, the prosecutor's decision is based upon an improper factor, such as the defendant's race or religion. *Nagle,* 64 Ohio St.2d at 347, 18 O.O.3d 503, 415 N.E.2d 279. A prosecutor may consider the nature or degree of aggravation of a crime in deciding whether to prosecute. *Nagle,* 64 Ohio St.2d at 348, 18 O.O.3d 503, 415 N.E.2d 279. Similarly, "a claim that others violate a statute with impunity does not make out a denial of equal protection unless it is shown that there is some form of discrimination in the actual enforcement of the statute." *Rhinehart v. Rhay* (C.A.9, 1971), 440 F.2d 718, 727; *Nagle,* 64 Ohio St.2d at 347, 415 N.E.2d 279.

{¶ 21} In *State v. Miller* (1997), 122 Ohio App.3d 111, 701 N.E.2d 390, the Third District Court of Appeals addressed an analogous situation to that alleged by the defendant in this case. Miller complained that because he was male, he was charged for various drug offenses, while a woman, who was in the house at the time of the execution of a search warrant, was not. Citing *Flynt* and *Berrios,* the court of appeals noted:

{¶ 22} "Miller introduced no evidence or even any suggestion that the state does not prosecute other people similarly situated, but has selected Miller for prosecution. To satisfy this prong [of the *Flynt* test], Miller would have to demonstrate other situations where men and women live together, there is an arrest for an offense occurring in the home, and only the males are selected for prosecution when the evidence suggests both residents are culpable. If selective prosecution is occurring in the jurisdiction, Miller would be able to cite other similar situations where men are prosecuted, and women are not charged. Without citation to similar situations in the jurisdiction, Miller's assertion of selective prosecution cannot succeed." *Miller,* 122 Ohio App.3d at 121–122, 701 N.E.2d 390.

## CONCLUSION

{¶ 23} Defendant has not shown that men are being prosecuted in Cleveland for domestic violence while women are being set free for the same offense simply because of their sex. The court knows from its own experience that this is not so. Defendant also has not shown that the CPD's receipt of funds through a VAWA grant has violated his constitutional right to equal protection of the law.

{¶ 24}   Defendant's argument is innovative but ultimately unpersuasive.   Accordingly, his motion to dismiss should be, and hereby is, denied.

Motion to dismiss denied.